IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**MARCELO SOSTAITA, Individually**     **PLAINTIFF**
and on Behalf of All Others Similarly
Situated

vs.            No. 4:23-cv-54-KGB

**SANCHEZ CONCRETE LLC, and**     **DEFENDANTS**
**ALEJANDRO SANCHEZ**

## DECLARATION OF MARCELO SOSTAITA

I, Marcelo Sostaita, do hereby swear, affirm and attest as follows, based upon my personal knowledge of the matters contained herein:

1. My name is Marcelo Sostaita, and I am over the age of 18 and duly qualified to execute this declaration.

2. I am a resident and domiciliary of the State of Arkansas.

3. I was employed by Sanchez Concrete LLC ("Sanchez Concrete") and Alejandro Sanchez ("Sanchez") (collectively ("Defendants"), to work as a dump truck driver from November of 2020 until April of 2021, and then again from November of 2021 to April of 2022.

4. Sanchez Concrete is a concrete construction business located in Jacksonville that is owned and operated by Sanchez.

5. Sanchez runs the day-to-day business of Sanchez Concrete. He is the authority on site who dictates where the trucks and materials go and who is responsible for getting it there.

6. Sanchez hired me on as a dump truck driver during both of the times frames that I performed work for Sanchez Concrete. When I quit, it was Sanchez I notified both times.

7. Sanchez signed all of my paychecks and distributed them when I got paid.

8. Sanchez set my schedule: he told me when to show up, which truck to drive, and where I was supposed to drive it. If I had to miss work for some reason, I had to tell Sanchez that I wouldn't be there, and my pay was docked accordingly. If I ever missed work without telling Sanchez, I could have been disciplined or terminated.

9. As a dump truck driver, my duties were to drive Defendants' trucks to wherever Sanchez told me to go. I did not have to have any special skills or training to drive the trucks. I already had a Class A driver's license, so Sanchez told me I was good to go. I drove Defendants' trucks and materials to Defendants' customers' job sites so that Defendants could perform the concrete services that were integral to their business. Sanchez told me what materials to load and which tools I would need and where I needed to take them. I only drove the trucks within Arkansas state lines.

10. Defendants always paid me an hourly wage. Sanchez told me that I would be paid $20.00 per hour, and I received handwritten checks signed by Sanchez every other week. I did not receive pay stubs, nor did I receive any form of tax documents, so I don't know if taxes were withheld on my wages.

11. I did not financially invest in Sanchez Concrete. I didn't own the trucks I drove or the materials that I moved, nor was I required to pay any sort of insurance or have any form of licensure before driving the trucks. Defendants paid for the gas,

insurance, and registration for the dump truck. I had to maintain a valid driver's license, but I would have done that whether I drove dump trucks for Defendants or not.

12. I did not share in Defendants' profits and losses. I just got a paycheck based on the same hourly rate every other week.

13. I didn't set or negotiate my own wages. Sanchez told me what I would be paid when he hired me.

14. I didn't accept jobs or customers on Defendants' behalf. I never answered the company phone, advertised the business, or even talked to a potential customer before arriving at a job site to perform a job that had already been negotiated and agreed to. Sanchez handled all of that; I just showed up to work and drove the truck wherever Sanchez told me to.

15. When Sanchez hired me, it was my understanding that the job was mine until one or the other of us ended it. What I mean is, I was not hired for a specific job or customer; I was hired on to work on all of Defendants' projects indefinitely.

16. I did not set my own work schedule. Sanchez set the schedules and I had to work when he told me to. I was required to arrive at work when Sanchez told me to be there and I was not permitted to leave until Sanchez said it was okay. I was not permitted to refuse an assignment or a customer; if I didn't go where Sanchez told me to go I would have been disciplined or fired.

17. I was not a part of Defendants' business decisions. My only role with Defendants was to show up and drive the truck.

18. Sanchez provided me with a shirt with the company logo on it that I had to wear to customer job sites.

19. I tracked my time by reporting to Sanchez when I arrived and when I left. I never filled out a timesheet, and I don't know how Sanchez kept track of my hours.

20. Defendants' business operation hours were Monday through Friday, 8:00 am to 5:00 pm. I had no say in business operation hours. We worked Monday through Friday and were off on the weekends when the business was closed. In a typical workweek, I arrived around 6:30 am and ended the day around 7:00 pm. Sanchez wanted us on a job site working by 8:00 am, so we arrived at 6:30 am to prep and load the trucks. Likewise, we were expected to be on-site with Defendants' customers until 5:00 pm, but we had to return to the yard for unload and cleanup when we were done, which usually took until around 7:00 pm.

21. Based on this, I estimate that I worked between 20 and 25 hours of overtime each week of my employment.

22. Defendants paid me $20.00 per hour during the time that I worked for them. I did not receive an overtime premium for any of the hours I worked over 40 in a workweek.

**PURSUANT TO 28 U.S.C. § 1746, I VERIFY UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed this 24th day of May, 2024.

_____
**MARCELO SOSTAITA**