**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**MARCELO SOSTAITA, Individually and on**
**Behalf of All Others Similarly Situated**                                       **PLAINTIFF**

**v.**                                       **Case No. 4:23-cv-00054 KGB**

**SANCHEZ CONCRETE, LLC and**
**ALEJANDRO SANCHEZ**                                       **DEFENDANTS**

**OPINION AND ORDER**

Plaintiff Marcelo Sostaita, individually and on behalf of all others similarly situated, filed

this lawsuit on January 24, 2023, against defendants Sanchez Concrete, LLC, and Alejandro

Sanchez, asserting violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA")

and the Arkansas Minimum Wage Act, Arkansas Code Annotated § 11-4-201, *et seq*.

("AMWA") (Dkt. No. 1).  Mr. Sostaita has not moved for certification of a collective (Dkt. No.

7, ¶ 2).  Pending before the Court is Mr. Sostaita's motion for summary judgment on his

individual claims only (Dkt. No. 7, ¶ 2).  Defendants have not responded to the motion for

summary judgment, and the time for doing so has passed.  For the following reasons, the Court

grants, in part, and denies, in part, Mr. Sostaita's motion for summary judgment (Dkt. No. 7).

I.       **Factual Background**

Mr. Sostaita served defendants with written discovery, including interrogatories, requests

for production, and requests for admission on February 14, 2024 (Dkt. No. 9, ¶ 1).  Defendants

did not respond to Mr. Sostaita's discovery requests, and the requests for admission are deemed

admitted pursuant to Federal Rule of Civil Procedure 36.  The following facts are taken from the

statement of undisputed material facts filed by Mr. Sostaita in conjunction with his motion for

summary judgment (Dkt. No. 9).  Because defendants have failed to respond to the motion for

summary judgment, Mr. Sostaita's statement of undisputed material facts are deemed admitted. *See* Local Rule 56.1(c) of the United States District Court for the Eastern and Western Districts of Arkansas ("All material facts set forth in the statement filed by the moving party pursuant to paragraph (a) shall be deemed admitted unless controverted by the statement filed by the non-moving party under paragraph (b).").

Defendant Sanchez Concrete, LLC ("Sanchez Concrete"), is a concrete construction business owned and operated by defendant Alejandro Sanchez (*Id.*, ¶ 2). As owner and operator, Mr. Sanchez controls the day-to-day business operations of Sanchez Concrete (*Id.*, ¶ 3). Mr. Sanchez set all policies regarding pay for Sanchez Concrete employees including wages and overtime premiums (*Id.*, ¶ 4).

Mr. Sanchez hired Mr. Sostaita to work for Sanchez Concrete and terminated his employment (*Id.*, ¶ 5). Mr. Sanchez set Mr. Sostaita's work schedule and controlled the manner in which Mr. Sostaita performed his job duties by telling Mr. Sostaita when to arrive and where to drive the dump truck that Mr. Sostaita drove for defendants (*Id.*, ¶ 6). As a dump truck driver, Mr. Sostaita drove defendants' dump trucks and materials to defendants' customers' job sites in order that defendant could accomplish its business purpose of pouring concrete (*Id.*, ¶ 7).

Defendants treated Mr. Sostaita as an employee and presented Mr. Sostaita as an employee to customers and clients (*Id.*, ¶ 8). During his employment with defendants, defendants paid Mr. Sostaita an hourly wage. Mr. Sostaita did not set his own wages but accepted what Mr. Sanchez told him he would be paid (*Id.*, ¶ 9). Mr. Sostaita did not invest in defendants' business, nor could he earn profits or suffer losses through his own independent efforts and decision-making with the company (*Id.* ¶ 10).

Defendants hired Mr. Sostaita to work for an indefinite period.  Mr. Sostaita was not hired to work for one specific job or service; he was hired to work for defendants until either party terminated the relationship (*Id*., ¶ 11).  Mr. Sostaita was not permitted to accept jobs or customers on defendants' behalf.  Mr. Sostaita risked discipline up to and including termination if he refused to perform the job that Mr. Sanchez directed him to perform (*Id*., ¶ 12).  Defendants required Mr. Sostaita to wear a shirt with the company logo on it when he worked at defendants' customers' job sites (*Id*., ¶ 13).

Mr. Sostaita tracked his time by reporting to Mr. Sanchez when he arrived and when he left.  Mr. Sanchez did not keep an accurate log of Mr. Sostaita's hours worked (*Id*., ¶ 14).  Mr. Sostaita worked well over 40 hours per week during his average workweek with defendant. Monday through Friday, Mr. Sostaita arrived at work at 6:30 a.m. to prep and load defendants' trucks and equipment, worked from 8:00 a.m. to 5:00 p.m. at defendants' customers' job sites, then returned, unloaded, and cleaned the trucks and materials until around 7:00 p.m. (*Id*., ¶ 15). Accordingly, Mr. Sostaita worked 20 to 25 hours of overtime during each week of his employment (Dkt. No. 9, ¶ 16).  Defendants did not pay Mr. Sostaita an overtime premium for the hours over 40 that Mr. Sostaita worked in a workweek (*Id*., ¶ 17).

## II.    Legal Standard

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."); *UnitedHealth Group Inc. v. Executive Risk Specialty*

*Ins. Co.*, 870 F.3d 856, 861 (8th Cir. 2017) (citing Federal Rule of Civil Procedure 56 and noting that summary judgment is proper if there is no genuine issue of material fact for trial).

Under such circumstances, the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322. "In ruling on a motion for summary judgment '[t]he district court must base the determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial.'" *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 923 (8th Cir. 2004) (internal citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Johnson Regional Medical Ctr. v. Halterman*, 867 F.3d 1013, 1016 (8th Cir. 2017) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).

Parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

III.    Analysis

Mr. Sostaita argues that he is entitled to summary judgment on his claim that defendants improperly classified him as an independent contractor (Dkt. No. 8, at 3–12).  Further, Mr. Sostaita contends that he is entitled to summary judgment on his claim that Mr. Sanchez is individually liable as an employer (Dkt. No. 8, at 12–16).  Finally, Mr. Sostaita claims that his he is entitled to summary judgment on his claim for damages consisting of unpaid wages, an equal amount as liquidated damages, and a reasonable attorney's fee (Dkt. No. 8, at 16–17).  The Court will discuss each ground on which Mr. Sostaita moves for summary judgment in turn.

A.     Mr. Sostaita's Status Under The FLSA And AMWA

Mr. Sostaita asserts that he was an employee of defendants and not an independent contractor.  Employer is defined under the FLSA[1] as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  The FLSA defines an "employee" as "any individual employed by an employer" and defines "employ" as "to suffer or permit to work."  29 U.S.C. §§ 203(e)(1), 203(g).  "The test for employment under the [FLSA] is one of economic reality."  *Karlson v. Action Process Servicer & Private Investigations, LLC*, 860 F.3d 1089 (8th Cir. 2017) (quoting *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 301 (1985)) (internal quotation marks, alterations, and citations omitted).  "In determining whether an entity functions as an individual's employer, courts generally look to the economic reality of the arrangement."  *Blair v. Wills*, 420 F.3d 823, 829 (8th Cir. 2005) (citing *Goldberg v.*

---

[1] Arkansas Administrative Code Title 010.14.1-112 provides that the Arkansas Department of Labor may rely upon federal precedent established by the FLSA in interpreting the AMWA. Courts regularly use FLSA precedent to interpret the AMWA.  *See Karlson v. Action Process Serv. & Private Investigation, LLC*, 860 F.3d 1089, 1092 n.3 (8th Cir. 2017); *Harris v. Express Courier Int'l*, Case No. 5:16-cv-05033, 2017 WL 5606751, at *4 (W.D. Ark. Nov. 21, 2017).

*Whitaker*, 366 U.S. 28, 33 (1961) ("[T]he 'economic reality' rather than 'technical concepts' is to be the test of employment")).

Courts typically analyze the following six factors:  (1) the degree of control exercised by the alleged employer; (2) the individual's investment in the business; (3) the degree to which the individual's opportunity for profit and loss is determined by the alleged employer; (4) the skill and initiative in performing the job; (5) the permanency of the relationship; and (6) the extent to which the work is an integral part of the alleged employer's business.  *See, e.g.*, *Whitworth v. French Quarter Partners, LLC*, Case No. 6:13-cv-6003, 2014 WL 12594213, at *3 (W.D. Ark. June 30, 2014); *see also Harrell v. Diamond A Entm't, Inc.*, 992 F. Supp. 1343, 1348 (M.D. Fla. 1997).

### 1.  Degree Of Control

The factor assessing the degree of control exercised evaluates "whether a worker's 'freedom to work when [he or she] wants and for whomever [he or she] wants reflects economic independence, or whether the freedoms merely mask[s] the economic reality of dependence.'" *Carter v. Primary Home Care of Hot Springs, Inc.*, Case No. 6:14-cv-6092, 2015 WL 11120563, at *3 (W.D. Ark. May 14, 2015) (quoting *Reich v. Priba Corp.*, 890 F. Supp. 586, 592 (N.D. Tex. 1995)).  In evaluating the degree of control, it is necessary to distinguish discretion and flexibility from independence.  If individuals have some discretion and flexibility in how they perform their jobs, but the employer ultimately retains most of the control in how a job is performed, then this factor weighs in favor of finding employee status under the FLSA.  *See Whitworth*, 2014 WL 12594213, at *4–*5 (the degree of control factor weighed in favor of finding dancers were employees because, even though they were given some discretion and flexibility in how they performed their work, their work was ultimately controlled by the club); *Carter*, 2015 WL 11120563, at *3 (concluding that factor weighed towards finding caregivers employees because

even though the caregivers had discretion with how they performed their duties and in creating

their schedules, the employer exercised significant control); *but see Roslov v. DirecTV Inc.*, 218

F. Supp. 3d 965, 976 (E.D. Ark. 2016) (concluding that factor weighed in favor of finding that a

satellite technician was an independent contractor because he was able to set his own schedule and

could determine the amount of work he did).

Defendants controlled Mr. Sostaita's work hours, pay scale, and services performed.

Defendants dictated when Mr. Sostaita was required to work and the manner in which he

performed his work. Defendants told Mr. Sostaita which tools and materials to load, which truck

to drive, and where to drive it. Mr. Sostaita never accepted customers on defendants' behalf. Mr.

Sostaita did not communicate with potential customers, and Mr. Sostaita was not permitted to

refuse any assignment or customer. If Mr. Sostaita did not drive the dump truck where he was

directed, he risked discipline up to termination. Mr. Sostaita had no financial investment in the

business and did not share in the profits or losses of the business. As a dump truck driver, Mr.

Sostaita did not have any say in how the business was performed or how business decisions were

made. Based on the record before the Court, the Court concludes that the degree of control of

business operations factor weighs in favor of finding Mr. Sostaita an employee and not an

independent contractor.

### 2. Opportunity For Profit Or Loss

When evaluating an individual's opportunity for profit and loss, courts have looked at

whether the individual has an ownership interest in the business and whether the individual bears

the risk of economic losses. *See Roslov*, 218 F. Supp. 3d 974, 977; *Whitworth*, 2014 WL

12594213, at *5; *Carter*, 2015 WL 11120563, at *4; *Miller v. Centerfold Entertainment Club, Inc.*,

Case No. 6:14-cv-6074, 2017 WL 3425887, at *6 (W.D. Ark. 2017). In *Roslov*, the court

concluded that a satellite television equipment technician was an independent contractor in part because he was in control of his profits and losses in that "there were not agreements guaranteeing Roslov a certain income level each week," and he would bear the economic loss if he was unable to work or was not provided with orders to service.  218 F. Supp. 3d at 977.

Mr. Sostaita had no financial investment in the business and did not share in the profits or losses of the business.  Mr. Sostaita could not hire subcontractors to increase his profit because he did not own the equipment or materials he used to perform his duties for defendants.  Mr. Sostaita did not have an opportunity to work for other companies because he worked for defendants.  Based on the record before the Court, the Court concludes that the opportunity for profit or loss factor weighs in favor of finding Mr. Sostaita an employee and not an independent contractor.

### 3.   Worker's Investment In The Business

An individual who makes significant investments in the business weighs in favor of independent contractor status.  *Roslov*, 218 F. Supp. 3d at 975.  Even if an individual purchases his or her own tools and equipment to do the job, some courts have determined that does not automatically weigh in favor of finding independent contractor status because it is a relatively minor investment in the business compared to the investment of the employer.  *Stagl v. Vadell*, Case No. 4:11-cv-014, 2011 WL 5553484, at *4 (D. N.D. Nov. 15, 2011) (concluding after weighing all of the factors that cosmetologists were employees even though they provided their own hair dryers, flat irons, and scissors); *Karnes v. Happy Trails RV Park, LLC*, 361 F. Supp. 3d 921, 930 (W.D. Mo. 2019) (concluding that a park manager was an employee because, even though he provided his own hand tools, the park owners provided a lawn mower, trimmers, a computer, golf cart, pool supplies, a cash register, and a garage in which to store equipment in addition to complimentary on-site housing); *Miller*, 2017 WL 3425887, at *5 (concluding dancers were

8

employees of a club in part because even though they provided their own costumes, it was insignificant compared to the amount the club owner expended in operating the club).

Mr. Sostaita did not invest in defendants' business to any extent, even to buy his own equipment.  Defendants owned the dump truck that Mr. Sostaita drove and the materials that Mr. Sostaita transported in the dump trucks, as well as bore the full responsibility of typical business expenses such as advertising, labor costs, and property costs.  Defendants paid for gas, insurance, and registration on the dump trucks that Mr. Sostaita drove.  Mr. Sostaita merely had to maintain a valid driver's license.  Based on the record before the Court, the Court concludes that the individual's investment in the business factor weighs in favor of finding Mr. Sostaita an employee.

### 4.  The Skill And Initiative In Performing The Job

The skill and initiative factor looks not only at the skill required to perform the job but also considers "certain elements of business initiative, such as attempts to advance a business and expand [a] client base and goodwill through advertising, marketing, and sales methods, and choice of products or services." *Carter*, 2015 WL 11120563, at \*4 (citing *Reich v. Circle C. Invs.*, 998 F.2d 324, 328 (5th Cir. 1993); *Reich v. Priba Corp.*, 890 F. Supp. 586, 593 (N.D. Tex. 1995)).  In other words, a court looks at whether the individual had a particular degree of skill required to perform the job and whether they had the initiative to elevate their status as an independent contractor.  Individuals who work in trades are usually regarded as independent contractors. *Roslov*, 218 F. Supp. 3d at 975.

Mr. Sostaita's work required no technical skills or specialized training.  Mr. Sostaita performed the work that defendants directed him to perform for defendants' customers.  Mr. Sostaita did not have his own customers.  Mr. Sostaita was not involved in obtaining new customers, and defendants did not encourage Mr. Sostaita to seek new business on their behalf.

Mr. Sostaita was not in competition with the other dump truck drivers who worked for defendants. Based on the record before the Court, the Court concludes that the skill and initiative factor weighs in favor of finding Mr. Sostaita an employee and not an independent contractor.

### 5. Permanency Of The Relationship

"The more permanent the relationship, the more likely the worker is to be an employee." *Schultz v. Capital Intern. Sec., Inc.*, 466 F.3d 298, 309 (4th Cir. 2006). Courts have held that an indefinite, open-ended relationship with no specified expiration can, in some instances, favor a finding of an employment relationship. *See, e.g., Karnes*, 361 F. Supp. 3d 921 at 932 (W.D. Mo. 2019) (finding an employment relationship where plaintiff and defendant had a six-year open ended business relationship and where there was no evidence that plaintiff had a business relationship with anyone else during that period). Further, even employment relationships that allow for employment elsewhere may still in some circumstance favor a finding of an employment relationship. *See, e.g., Miller*, 2017 WL 3425887, at *6 (concluding that permanency factor weighed in favor of plaintiff dancers being employees because dancers worked at club between one and eight years and were required to work at club three nights per week even when they held other employment).

Mr. Sostaita understood that he was not hired for a fixed term or a single project, but he was hired to drive a dump truck for whatever projects defendants sent him to until either he or defendants ended the relationship. Mr. Sostaita worked exclusively for defendants, and defendants scheduled plaintiff to work such that performing dump truck driving for another concrete business would not have been meaningfully possible. Mr. Sostaita worked from 6:30 a.m. to 7:00 p.m. Monday through Friday performing assignments for defendants. Based on the record before the

Court, the Court concludes that the permanency of the relationship factor weighs in favor of Mr. Sostaita being an employee of defendants.

### 6.  Integral Part Of The Business

The last factor the court considers is whether the work the individual does is an integral part of the alleged employer's business.  An individual's tasks are integral to the employer's business when the business cannot operate without the individual providing those services.  *See Whitworth*, 2014 WL 12594213, at *7 (finding factor weighed in favor of finding dancers to be employees because the club could not operate without their services); *Miller*, 2017 WL 3425887, at *6 (same); *Karnes*, 361 F. Supp. 3d 921 at 932 (finding factor weighed in favor park managers being employees because their services were critical for park operations); *Carter*, 2015 WL 11120563, at *5 (finding factor weighed in favor of caregivers being employees because caregiving services were the main services of that business).

Mr. Sostaita's job was an integral part of defendants' business because, without Mr. Sostaita to transport tools, materials, and equipment to the job site, defendants would not be able to perform concrete construction services.  Based on the record before the Court, the Court concludes that the integral part of the business factor weighs in favor of finding Mr. Sostaita an employee and not an independent contractor.

### 7.  Conclusion

Based on the record before the Court and considering all the factors set forth above, the Court determines that Mr. Sostaita is entitled to summary judgment on his claim that he was an employee of defendants under the FLSA and AMWA and not an independent contractor.

### B.      Mr. Sanchez's Status As An Employer

Mr. Sostaita argues that, as the owner and operator of Sanchez Concrete, Mr. Sanchez is individually liable as an employer under the FLSA and AMWA (Dkt. No. 8, at 12–16). The FLSA statute broadly defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). The United States Supreme Court has noted that the FLSA defines the employment relationship "expansively" and with "striking breadth." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992). "In determining employer status, 'economic reality' prevails over technical common law concepts of agency." *Brown v. L & P Indus., LLC*, Case No. 5:04-cv-0379 JLH, 2005 WL 3503637, at *12 (E.D. Ark. Dec. 21, 2005); *see Goldberg v. Whitaker*, 366 U.S. 28, 33 (1961). Courts "have looked to factors such as the control of hiring and firing of employees, control of the manner in which work is performed, and the fixing of employee wages in determining who is the 'employer'" under the FLSA. *Dole v. Cont'l Cuisine, Inc.*, 751 F. Supp. 799, 802–03 (E.D. Ark. 1990) (citing *Wirtz v. Pure Ice Co.*, 322 F.2d 259 (8th Cir. 1963); *Fruco Const. Co. v. McClelland*, 192 F.2d 241 (8th Cir. 1951)). "The Eighth Circuit has held that a corporate officer with operational control of the corporation's day-to-day functions is an employer within the meaning of the FLSA." *Simms v. Northport Health Servs. of Ark., L.L.C.*, Case No. 2:12-cv-02252, 2013 WL 2102974, at *2 (W.D. Ark. May 14, 2013) (citing *Wirtz*, 322 F.2d at 262–63; *see also Wandrey v. CJ Pro. Satellites, Inc.*, Case No. 5:14-cv-05087, 2014 WL 4425799, at *3 (W.D. Ark. Sept. 9, 2014).

Mr. Sanchez was involved in the day-to-day operations of Sanchez Concrete (Dkt. Nos. 7-1, ¶ 5; 7-2, at 2). Mr. Sanchez personally made hiring and firing decisions, including hiring Mr. Sostaita (Dkt. Nos. 7-1, ¶¶ 6, 15; 7-2, at 2–3). Mr. Sanchez was personally in control of the

policies regarding pay for all employees of Sanchez Concrete (Dkt. Nos. 7-1, ¶ 10; 7-2, at 2). Mr. Sanchez set Mr. Sostaita's pay at $20.00 per hour and signed Mr. Sostaita's hand-written checks that he received every other week (Dkt. No. 7-1, ¶¶ 7, 10). Mr. Sanchez told Mr. Sostaita what tasks to perform, when to show up, and when he could leave (*Id*., ¶¶ 8, 16). As the person in charge of payroll policies for employees of Sanchez Concrete, Mr. Sanchez decided to misclassify Mr. Sostaita as an independent contractor and decided to pay Mr. Sostaita an hourly rate with no overtime premium (Dkt. No. 7-2, at 2). Mr. Sanchez maintained the employment records for Mr. Sostaita (Dkt. No. 7-1, ¶¶ 7, 19). Based on the record before the Court and the broad definition of employer under the FLSA and AMWA, the Court determines that Mr. Sostaita is entitled to summary judgment on his claim that Mr. Sanchez is individually liable to him as an employer.

### C.    Damages

Mr. Sostaita seeks through his summary judgment motion an award of damages consisting of unpaid wages, an equal amount as liquidated damages, and a reasonable attorney's fee (Dkt. No. 8, at 16). Mr. Sostaita contends that defendants are liable to him for the overtime premium for each of his hours worked over 40 "during his employment with Defendants." (*Id*.). Mr. Sostaita provides his rate of pay, but he has not provided the Court with the actual weeks that he was employed with defendants from November 2020 until April 2021 and from November 2021 until April 2022 (Dkt. No. 8, at 16). Further, Mr. Sostaita has not provided any information to support his claim for reasonable attorney's fees and costs. Accordingly, the Court denies without prejudice Mr. Sostaita's motion for summary judgment on damages, attorney's fees, and costs.

## IV.    Conclusion

The Court grants, in part, and denies, in part, Mr. Sostaita's motion for summary judgment (Dkt. No. 7).  The Court grants Mr. Sostaita's motion for summary judgment on his claim that defendants Sanchez Concrete, LLC, and Alejandro Sanchez violated the minimum wage provisions of the FLSA and AMWA by classifying him as an independent contractor rather than an employee.  The Court grants Mr. Sostaita's motion for summary judgment on his claim that Mr. Sanchez is individually liable to Mr. Sostaita for violating the minimum wage provisions of the FLSA and AMWA.  The Court denies without prejudice Mr. Sostaita's motion for summary judgment on damages, attorney's fees, and costs.  The Court removes the case from the trial calendar for the week of July 29, 2024, and directs Mr. Sostaita to submit within 14 days from the entry of this Order additional briefing and record support on his request for damages, attorney's fees, and costs or a request to set the case for a hearing on damages, attorney's fees, and costs.

It is so ordered this 15th day of July, 2024.

_Kristine G. Baker_

Kristine G. Baker
Chief United States District Judge